NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----

MICHOLE SANDERS,

        Plaintiff,

   v.

JACKSON TOWNSHIP POLICE
DEPARTMENT, et al.,

        Defendants.

----

Civil No. 10-6305 (PGS)

OPINION

APPEARANCES:

    MICHOLE SANDERS, Plaintiff pro se
    # M1897
    Ocean County Jail
    120 Hooper Avenue
    Toms River, New Jersey 08754

**SHERIDAN**, District Judge

    Plaintiff, Michole Sanders, a state inmate confined at the Ocean County Jail in Toms River, New Jersey, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether the Complaint should be dismissed as frivolous or malicious, for

failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed with prejudice.

## I. BACKGROUND

Plaintiff, Michole Sanders ("Sanders"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: the Jackson Township Police Department ("JTPD"), Matthew D. Kunz, Police Chief; Lieutenant John Siedler; Sergeant Dennis Campbell; Detective Scott Conover; and Detective Mitchell Cowit, all members of the JTPD. (Complaint, Caption and ¶¶ 4.b through 4.g). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Sanders alleges that, on May 23, 2009, he had been assaulted and was taken to the hospital for treatment of a head trauma, lacerations, fractures to his left wrist and arm, and other injuries. While at the hospital, Detectives Conover and Cowitt took plaintiff to a private room to question him. Sanders alleges that he was held in the private room for an hour and 25 minutes without receiving any medical treatment. Sanders also alleges that he told Conover and Cowit that he was in pain during this time. (Compl., ¶ 6).

Sanders further alleges that, on July 21, 2010, at plaintiff's Miranda hearing in his state criminal proceedings, Conover perjured himself by stating that plaintiff never told him he was in pain. (Id.). Sanders also contends that Conover and Cowit misrepresented themselves at the hospital when they told plaintiff that they were there to assist the Lakewood Police Department concerning the assault that had taken place against Sanders. Sanders claims that this misrepresentation was conducted to extract an incriminating statement from plaintiff in violation of plaintiff's constitutional rights. (Id.).

Sanders seeks $ 750,000.00 in compensatory and punitive damages from all defendants. (Compl., ¶ 7).

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

3

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court

4

reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. <u>Id</u>. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[1] Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

5

> cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

6

Consequently, the Third Circuit observed that <u>Iqbal</u> provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before <u>Twombly</u>. <u>Fowler</u>, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in <u>Iqbal</u> when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [<u>Id</u>.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See <u>Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this <u>pro se</u> pleading must be construed liberally in favor of Plaintiff, even after <u>Iqbal</u>. See <u>Erickson v. Pardus</u>, 551 U.S. 89

---

[2] In <u>Conley</u>, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Id</u>., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

7

(2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III. SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV. ANALYSIS

### A. Unconstitutional Interrogation Claim

Sanders appears to assert that defendants Conover and Cowit conducted an unconstitutional custodial interrogation of plaintiff while he was at the hospital. Sanders admits that these defendants, by deception and other wrongful interrogation techniques, did extract an incriminating statement from plaintiff, which apparently led to his arrest on unspecified criminal charges.

The Supreme Court's opinion in Miranda v. Arizona, 384 U.S. 436 (1966), prohibits the government from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. Miranda requires that, prior to a custodial interrogation, police must warn a person that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be provided. Id. at 479. The problem with Sander's § 1983 claims based on his allegedly coerced statement is that "questioning a plaintiff in custody without providing Miranda warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against [him] at trial." Renda v. King, 347 F.3d 550, 557-58 (3d Cir. 2003); see also

9

Chavez v. Martinez, 538 U.S. 760 (2003). Because the Complaint does not support an inference that Sander's statement has been used against him at trial to obtain a criminal conviction, this §1983 claim based on the statement fails. See Renda, 347 F.3d at 559 (right against self-incrimination not violated where police used statements obtained from a custodial interrogation where the plaintiff was not warned of his Miranda rights as a basis for filing criminal charges, but charges were later dismissed). This Court will dismiss the Complaint for failure to state a claim upon which relief may be granted.

To the extent Sanders seeks to assert a claim for damages based directly upon the failure to give a proper Miranda warning, or questioning or acquisition of a statement in violation of his Miranda warning rights, he fails to state a claim. "[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself.... The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in [Miranda] is merely a procedural safeguard and not a substantive right." Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) (citations omitted). Thus, Sanders has no free-standing Fifth Amendment right to remain silent during interrogation. Nor does he have a free-standing Fifth Amendment claim for denial of the right to counsel during questioning. See James v. York County

10

Police Dept., 160 Fed. Appx. 126, 133, 2005 WL 3313029, *5 (3d Cir. 2005)(citing Giuffre). In addition, a person's Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688 (1972)(plurality opinion).

B.  The Due Process Claim

Sanders also appears to assert that the circumstances of the interrogation amounted to a violation of Plaintiff's due process rights under the Fourteenth Amendment. See, e.g., Chavez v. Martinez, 538 U.S. 760, 780 (2003)(under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated); County of Sacramento v. Lewis, 523 U.S. 833, 846-47, n. 8 (1998) (substantive due process rights are violated only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience"); Miller v. Fenton, 474 U.S. 104, 109 (1985)("certain interrogation techniques, either in isolation or as applied to unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment"); Rochin v. California, 342 U.S. 165 (1952)(due process violated when

11

evidence obtained by subjecting the suspect to an involuntary stomach pump).

Here, nothing about the circumstances alleged rises to the level of conscience-shocking behavior. Cf. Chavez v. Martinez, 538 U.S. 760 (2003)(no due process violation where police questioned suspect, who had been shot, while suspect was receiving medical treatment). This claim will be dismissed with prejudice for failure to state a claim.[3]

C. Supervisor Liability

The Court further finds that the Complaint must be dismissed with prejudice as against the defendant, the Jackson Township Police Department, because a police department is not a "person" which may be found liable under § 1983. See Petaway v. City of New Haven Police Dep't, 541 F. Supp.2d 504, 510 (D.Conn. 2008);

---

[3] To the extent that Sanders may be alleging that Conover and Cowit negligently conducted the investigation, which resulted in the filing of criminal complaints and an indictment against plaintiff, such claim also fails. A § 1983 claim for negligent investigation fails because "[t]he obligation of local law enforcement officers is to conduct criminal investigations in a manner that does not violate the constitutionally protected rights of the person under investigation. Therefore, whether the officers conducted the investigation negligently is not a material fact. Indeed, for Fourth Amendment purposes, the issue is not whether information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995). Thus, the Court will dismiss any § 1983 claim by plaintiff based on negligent criminal investigation.

12

PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 825-26 (D.N.J. 1993).

Finally, Sanders complains that the supervisory defendants, Matthew D. Kunz, John Siedler and Dennis Campbell, failed to oversee or properly train defendants Conover and Cowit in investigation techniques. This essentially is a claim of supervisor liability. Because the Court has found no actionable claim of a constitutional violation by the subordinate employees, Conover and Cowit, any claim based on supervisor liability would likewise be dismissed for failure to state a claim.

Moreover, even if Conover and Cowit had violated plaintiff's constitutional rights, as alleged, as a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties"). In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor

13

liability is inapplicable to Bivens[4] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948. Thus, each government official is liable only for his or her own conduct. The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. Id., 129 S.Ct. at 1949.

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted). "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Id. at 130.

---

[4] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

14

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test. See Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Hence, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right. Williams v. Lackawanna County Prison, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, plaintiff provides no facts describing how the supervisory defendants allegedly violated his constitutional rights, i.e., he fails to allege facts to show that these defendants expressly directed the deprivation of his constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation.[5] In short, Sanders has alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they failed to supervise or failed to protect plaintiff in violation of his Fifth and Fourteenth Amendment rights. These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950. Accordingly, this Court will disregard the Complaint's "naked assertions

---

[5] Plaintiff points to no particular policy concerning the training of officers in investigation techniques; instead, he appears to speculate that a general policy to violate due process exists based on this one instance of an alleged unconstitutional interrogation by Detectives Conover and Cowit. See City of Okla. City v. Tuttle, 471 U.S. 808, 821 (1985)(plurality)(stating that in the absence of a written policy that is itself unconstitutional, "more proof than the single incident [of excessive police force] will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation."); Id. at 832 (Brennan, J., concurring in the judgment)("[A] single incident of police misbehavior ... is insufficient as sole support for an inference that a municipal policy or custom caused the incident.")(emphasis in original); see also Gilmore v. Reilly, Civ. No. 09-5856, 2010 WL 1462876, at *8 (D.N.J. Apr.9, 2010)(same). Since no policy or custom is sufficiently pled, the claims against Kunz, Siedler and Campbell fail.

16

devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," <u>Iqbal</u>, 129 S.Ct. at 1949, and dismiss the Complaint with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), because plaintiff has failed to state a claim against these supervisory defendants.

## IV.  CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  An appropriate order follows.

_____
PETER G. SHERIDAN
United States District Judge

Dated: 7-25-11

17